Mr. Job. Thank you, Your Honor. May it please the Court, I am Robert Job and I'm appearing today on behalf of the petitioner Kamal Narayan. There are two issues in this case. First, does Mr. Narayan's credible testimony that he was repeatedly assaulted, stabbed, robbed, and threatened because of his Indian ethnicity compel the conclusion that he suffered harm or suffering that rises to the level of persecution? The I.J. in this case found him credible. Yes. And found that the, that whatever happened to him was on account of his race. Precisely, Your Honor. So we're here on does it equal persecution? That's the only issue. Now, the government says that the outcome with regard to that first question is governed by Prasad v. INS. That's simply not true. In Prasad, the panel majority focused on one single incident in which Prasad was taken from his taxi at gunpoint, detained for four to six hours, questioned regarding his involvement in the Labor Party, punched once in the stomach, and kicked once from behind. Now, in its brief, the government says that Prasad was also, quote, subjected to robberies of his home by native Fijians. This is in Respondent's brief at page 15. But I, I simply don't see that in Prasad. Although Prasad testified that ethnic Fijians, quote, threw rocks at his house and attempted to steal property, unquote, he never testified that he was robbed. And in any event, the panel majority in that case found that Prasad had failed to establish that the rock throwing and the attempts to steal property were on account of a protected ground. So they didn't include that in the mix, in the mix when determining whether the harm he suffered actually rises to the level of persecution. Now, by contrast, in this case, although the record is somewhat difficult to decipher, we know that in 1987, Mr. Narayan was attacked by eight ethnic Fijians and stabbed on both hands or arms. This was during the first coup? Yes. In 1988, ethnic Fijians broke into Mr. Narayan's apartment and robbed it, quote, several times. During one of those robberies, Mr. Narayan was stabbed for a second time. Around that same time, ethnic Fijians robbed the home of Mr. Narayan's sister. And when Mr. Narayan approached his sister's home, ethnic Fijians threatened to stab him if he got out of his cab. Finally, in 1987, he and his cousin were attacked or excuse me, 1997, he and his cousin were attacked and robbed by a group of ethnic Fijians who Mr. Narayan says, quote, bashed him up. That's on page 352 of the administrative record. As Judge Hawkins indicated, the immigration judge concluded that each and every one of these incidents was on account of race. The only issue in this case is do these incidents cumulatively rise to the level of persecution? Prasad is clearly not controlling. Any reasonable person would conclude that they do. The second issue in this case is actually an interesting one. That is, can the Board simply summarily affirm in I.J.'s denial of asylum when the alien has not only appealed an asylum denial, but also moved to renown for the consideration of additional evidence? Now, the government's position is that somehow in summarily affirming the immigration judge's decision in this case, the Board also ruled on the motion to remand. And I just don't see that. The reason I don't see that is that the motion to remand assumed the validity of the immigration judge's decision. The brief that we filed first attacked the immigration judge's decision, but then in the alternative said, if you disagree with us on those points and you think the immigration judge ruled correctly, we think that this case should be remanded for additional evidence. It's impossible to understand, then, how affirming the immigration judge's decision can dispose of the motion to reopen, because the motion to reopen is predicated on an assumption that the immigration judge's ruling was correct and is asking, despite the correctness of that ruling, for further evidentiary proceedings in light of additional evidence. So a summary affirmance simply can't dispose of that question. For that reason, in our view, what the Court should do here is first reverse, find that the evidence compels the conclusion that Mr. Narayan suffered past persecution, and then remand to the Board for consideration of the Reserves some time? Yes, Your Honor. We'll hear from the government at this time. Ms. Schwarz? Thank you, Your Honors. Nora Ascoli-Schwarz for Respondent John Ashcroft. In this case, Petitioner did suffer several incidents in 1987 and 1988, and I do apologize. In my 28-J letter, I said only one. That was a mistake. He suffered several incidents, but only one in which he was actually harmed. His home was burgled, and he was stabbed in the back of the head, and he was stabbed in the hand. His testimony is not clear whether it occurred in – it doesn't matter. It happened in 1987 and 1988 during the time of the coups. Nothing happened to him for 10 years. The first coup. The first two or three coups. Fiji was a little bit – and Fiji has been in a state of turmoil since then. There's no question about that. But – I guess so. When the military walks into Parliament and arrests the Prime Minister and the members of the elected majority and marches them off to jail, I guess you would call that turmoil. I think that's major turmoil. And then the people – when the people who march them off to jail are themselves marched off to jail, yes, it's unpleasant. It's – the country's in a mess. That puts one side against the other. But why does that go to the on-account-of prong? Not to interrupt, but it just seems to me that that argument and the approach the IJ took confuses past persecution with on-account-of. Absolutely, Your Honor. And however, while it may not have been a model of clarity, the point is, in the immigration judge's decision, was essentially after 1987, there were unpleasant experiences, but nothing happened to him after that, until this one isolated incident where he's on his way to a sports complex and he and his cousin are beaten up. But that's – again, you have, as she said, general conditions of violence. There's a long line of cases in this court and in every other court. But those, again, go to the on-account-of prong rather than whether it's persecution. Well, exactly. So it seems we have the odd situation here, I mean, analytically, where the IJ finds that the on-account-of prong is satisfied and, therefore, only rests on past persecution. Yes. Isn't that the only thing – we can't say, well, it's general country conditions, our cases say that, because country conditions go – I'm impeding myself – that it does go not to past persecution, it goes to on-account-of. Well, exactly. So what she's saying is, yes, it is on-account-of because it's one side against the other in a country fraught with turmoil that is in the decision. So do these incidents rise to the level of persecution? And part of the answer is the distance in time. No. They happened – they were at a time when the country was particularly in a violent – in a violent state. And in 1987 and 1988, and then nothing happened to him. There were some employment problems, but he held on to his job, and he was fully employed until he, you know, took a two-month vacation. And after three months that he didn't return, the job was given to someone else. But he continued to collect paychecks until his vacation was up. And then he was in the United States, no intention of returning. And, of course, they gave the job to someone else. So we don't have even employment discrimination here. He was fully employed until he took a two-month vacation and never came back. So the question is, is there past persecution? No. The incidents that he encountered were random. They were part of the general conflict going on, one side against another, and they were long ago in time, except for one incident in which he was beaten up. Moreover, as the government did cite to Farouk, you have the same problems that the Farouks experienced. You have a mixed marriage. You have mixed race. You have mixed religion. They didn't encounter any of the problems that the Farouks did. Petitioner's wife is Christian. Her mother is native Fijian, and he's Indo-Fijian. They didn't have this family crisis. They weren't stoned or anything. Basically, again, 10 years, well, 15 years ago now, he suffered several incidents and then nothing until one random isolated incident. He didn't flee the country for persecution. He just got a visa, went to visit his father in Australia, came back, and then came to the United States, and that's where he decided to stay. You don't have a picture of someone fleeing persecution. His wife and his children remain in Fiji, and nothing has happened to them. How do you distinguish this from Sarita? I beg your pardon? How do you distinguish this case from Sarita? Remind me of the facts in that case, please, Your Honor. Well, I think it's fairly similar to this. We have a series of beatings and what we might not consider perhaps in and of themselves a situation where it might rise to the level of persecution, but the cumulative nature of that, and it was a Fiji case, constituted past persecution. It's the sustained effect there. You had, and the same with the Farouks, it was a continuous assault on the Farouks and on Sarita, as I recall. But here we can't be ignorant of the history of Fiji. What happens in this country is there's racial turmoil. The native Fijians control the police and the military. The Indo-Fijian population, which was brought there originally as slaves, it's not unlike the past history of our southern United States. Except it's a little. They've achieved an electoral majority, and then there's all this tension and there's a coup, and then the international community cuts off all of their aid and isolates them, and they reform a bit. And then the tensions boil up again, and they start to happen again. There was another coup as late as 1999-2000, wasn't there? Yes, Your Honor. However, again, this is readily distinguishable that from the cases in which asylum was granted and well-founded fear was found and past persecution was found because it was a sustained. You're talking about general country conditions, but if you're going to talk about general country conditions, then both sides or half of the population could get asylum here. You have to find that he is specifically targeted or he has a fear that is different from every other Indo-Fijian, and he doesn't. Because maybe if he had come in 1988 after he had been stabbed and his house burgled, then he, like his brother, who went to Australia, might have gotten asylum. If this were an African from South Africa and it was during the time of apartheid and these things had happened and there was an acknowledgment by the IJ that this happens, that there is racial tension and there were incidents of beatings and stabbings and robberies and threats, would you send that person back? Well, I don't know, Your Honor, but we haven't sent Mr. Gormley back, and he's on the other side of the apartheid issue. He's a white who says, now I'm being beaten and I'm being persecuted because I'm white in South Africa. And this Court has said, well, I'm sorry, that's not enough. That's because of the change in the country, and that was a case that has been cited to this Court and to Mr. Job. Right. But aren't we getting pretty far down the analytical road when we talk about changed country conditions? I mean, basically, this case rests on past persecution. And let's assume for the moment that there was past persecution within the meaning of the INA, and it occurred ten years ago. Your argument seems to me to be saying that the passage of time means that there was no past persecution. No. It seems to me the difference is that we can say, no, that goes to changed country conditions, but we apply the presumption first if we find past persecution. So what happened ten years in the intervening period doesn't seem to me to make much difference. We have to focus on what happened at least in the initial period, right? In the initial period. And if there is past persecution, not necessarily, but let me finish my thought. If there is past persecution, then we're a man to see whether to apply the presumption, and you may well be right that country conditions have changed. But isn't that farther along the analytical chain here? Not no, and the immigration judge did address that because she said, well, yes, what happened there, these incidents were discreet in that period of time and did not rise to the level of persecution. There was one incident of harm in 1988 and some burglaries. But part of it is, and the country reports indicate this, although they were brought over initially as Indians were brought over initially as slaves, the Indians are the majority in the economy, and this is even in the motion to condemn them. The indications are that the countries, the culture, the Indian culture is strong and their economic success is strong, and they dominate trade and commerce. So they are the dominant economic force. But what of Koreans in south central L.A.? I'm not going down that path, Your Honor. I'm sorry. We understand your argument. Okay. But, you know, this is in AR-61. These are in the pages. It's in the State Department reports. It was on the record on review. It was on the record on appeal that the Indo-Fijians do control the economy. They're more successful. So when there is ethnic strife, they're the people. I mean, you rob people because they have stuff. You know, if they're more economic, and that was the finding in Gormley also. I mean, the man was attacked because he had a cell phone that people wanted. If you are a member of you may be a persecuted minority, but if you're a rich you'll be robbed because you have things that will be of value to people who have less. Can I address the remand argument? May I? Thank you. Well, here we go. In this case, we have ‑‑ it's governed by COLO. Because in that case, what you're arguing is basically the same thing, the same case that you're making and challenging the decision. The board can treat the motion to reopen as part of the appeal. That was addressed in the services brief, and it was addressed in the government's brief. In response, it was treated as part of the appeal. First of all, most of the documents which were submitted had been published before the hearing, and the arrests were cumulative and really corroborated everything that was in there before then. How do we know the board found that? The presumption of regularity, Your Honor. The board considered not only Mr. Job's wonderful brief on appeal, but also the government opposed it for the reasons in COLO. I mean, there was a specific opposition. It wasn't on the point of remand and said, well, we don't think remand is warranted. So when the board summarily affirmed it was doing so under matter of COLO, treating the remand as part of the appeal, would it have been better if they said, yes, we streamline and we find no reason to remand, perhaps, and certainly before this Court this morning I would say I wish they had, but they were not required to because in streamlining under board existing board precedent, when they affirm the immigration judge's decision and the motion to remand is part of the appeal, they are also denying the motion. They don't have to issue a separate decision. How do we know that when they simply say the decision below is the final agency determination? Because we don't. We have to apply the presumption of regularity. And in this case, the board, again, with that presumption and with matter of COLO, they were not required to make a separate ruling on the motion to remand. Okay. Thank you, Your Honor. Thank you for your argument. Thank you for coming in this morning. Mr. Job, rebuttal. And, again, I'm really sorry we tried to deport you, Your Honor. It won't happen again. I think it was probably a couple of generations ago removed from use. You're okay. Matter of COLO stands for the proposition that when a motion to remand simply articulates the remedy requested by an appeal, the board can treat it as part of the appeal. But here that's not what happened. In the appeal, we asked the board to reverse the decision of the immigration judge and grant asylum, withholding, et cetera. But in the motion to remand, we asked the board to remand this case to the immigration judge for a new evidentiary proceeding based on this new additional evidence that had come into play. Matter of COLO is simply not applicable. Moreover, the regulations regarding affirmance without opinion, they simply don't provide for this. They allow one simple thing. They allow the board to affirm without opinion the immigration judge's decision on the merits. Those regulations don't allow the board to adjudicate motions in that same fashion. There's no mention of motions in the regs. Thank you. The case just argued will be submitted for decision. I don't know about counsel's plans, though. In connection with the last case, there will be some comments that you relate to both of your practices. You're welcome to stay if you'd like. You don't have to stay if you have other things to do. I just wanted to alert you to that. Okay. That takes us to Chin. Counsel present on Chin?
judges: Hawkins, Thomas, Bea